1  FRANK N. DARRAS #128904, Frank@DarrasLaw.com
2  SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
   PHILLIP S. BATHER #273236, PBather@DarrasLaw.com
3  **DarrasLaw**
4  3257 East Guasti Road, Suite 300
5  Ontario, California 91761-1227
   Telephone:   (909) 390-3770
6  Facsimile:   (909) 974-2121
7  Attorneys for Plaintiff
   KOURTNEY SANKEY
8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  KOURTNEY SANKEY,

13              Plaintiff,                 COMPLAINT FOR BENEFITS UNDER
                                           AN EMPLOYEE WELFARE BENEFIT
14     vs.                                 PLAN

15
    THE PRUDENTIAL INSURANCE
16  COMPANY OF AMERICA; and, ACE
    CASH EXPRESS, INC. SHORT AND
17  LONG TERM DISABILITY INSURANCE
    PLAN,
18
19              Defendants.
20

21  Plaintiff alleges as follows:

22       1.    This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337

23  and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security

24  Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by

25  Plaintiff for Disability benefits under an employee benefit plan regulated and governed

26  under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C.

27  § 1331 as this action involves a federal question.

28       2.    The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of

1   the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

2   Those avenues of appeal have been exhausted.

3       3.     Plaintiff is informed and believes, and thereon alleges that the Defendant

4   plan named ACE CASH EXPRESS, INC. SHORT AND LONG TERM DISABLITY

5   INSURANCE PLAN (the "Plan") is an employee welfare benefit plan established and

6   maintained by The Prudential Insurance Company of America to provide its employees

7   and those of its subsidiaries and affiliates, including Plaintiff, KOURTNEY SANKEY

8   ("Plaintiff") with income protection in the event of a disability, and is the Plan

9   Administrator.

10      4.     Plaintiff alleges upon information and belief that Defendant, THE

11  PRUDENTIAL INSURANCE COMPANY OF AMERICA ("PRUDENTIAL"), is, and at all

12  relevant times was, a corporation duly organized and existing under and by virtue of the

13  laws of the State of New Jersey, authorized to transact and transacting the business of

14  insurance in this state, and the Claims Administrator for the Plan.

15      5.     Plaintiff further alleges that venue is proper in this district pursuant to 29

16  U.S.C. § 1132(e)(2) in that defendant PRUDENTIAL, who fully insured the Plan and who is

17  ultimately liable if Plaintiff is found disabled, may be found in this district.  Since on or

18  about May 13, 1901, PRUDENTIAL has been registered as a corporation with the State of

19  California, has extensive contacts within the state, employs California residents, conducts

20  ongoing business within the state and therefore, may be found within the state.

21      6.     At all relevant times Plaintiff was a citizen and resident of California, an

22  employee of Ace Cash Express, Inc., its successors, affiliates and/or subsidiaries, and a

23  participant in the Plan.

24      7.     Based upon information and belief, Plaintiff alleges that at all relevant times

25  herein Plaintiff was covered under Group Insurance Contract Number G-50561-TX ("the

26  Policy") that had been issued by Defendant PRUDENTIAL to the eligible participants

27  and beneficiaries of the Plan, including Plaintiff.  The Policy is attached hereto as

28  Exhibit "A."

8. The Plan provides a monthly benefit equivalent to sixty percent (60%) of Plaintiff's monthly earnings less deductible sources of income following a 180-day elimination period in the event of a disability.

9. The Plan defines "Disabled" as: "You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; you are under the regular care of a doctor; and you have a 20% or more loss in your monthly earnings due to that sickness or injury. After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury; you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and you are under the regular care of a doctor."

10. The Plan provides monthly benefits through the Employee's Normal Retirement Age.

11. Prior to her disability, Plaintiff was working as Sales Associate.

12. Plaintiff became disabled under the terms of the Plan on or about October 20, 2018, due to multiple sclerosis with multiple demyelinating lesions evident in diagnostic studies, as well as paresthesias and intermittent numbness in both hands and in the right lower extremity.

13. Plaintiff timely submitted a claim to PRUDENTIAL for payment of disability benefits. Plaintiff's disability claim was supported by Plaintiff's physicians who had personally examined her before opining she was disabled.

14. On or about August 12, 2019, PRUDENTIAL unreasonably and unlawfully denied Plaintiff's long term disability claim. Plaintiff timely appealed.

15. On or about February 20, 2020, PRUDENTIAL unreasonably and unlawfully upheld its denial of Plaintiff's long term disability benefits. Plaintiff timely appealed with assistance from counsel.

16. On or about December 16, 2020, PRUDENTIAL again unreasonably and unlawfully upheld its denial of Plaintiff's long term disability benefits.

17. In so doing, PRUDENTIAL unreasonably and unlawfully relied upon the



1  opinions of doctors who had never examined Plaintiff, who reviewed incomplete medical

2  records, and who were financially biased.

3      18.   Additionally, PRUDENTIAL knew, or should have known, that the

4  documentation submitted to and obtained by PRUDENTIAL substantiated Plaintiff's

5  disability, including, but not limited to, the following:

6      19.   On or about January 27, 2017, prior to Plaintiff becoming disabled, Plaintiff

7  reported to urgent care physician Michael Hinson, DO and reported full body numbness

8  over the past eight days, worse in her hands. That day, an MRI of the cervical spine

9  was performed. At C5-C6, a prominent posterior disc osteophyte complex indented the

10  thecal sac and the ventral cord, resulting in moderate to severe central canal narrowing

11  down to 7mm, along with left neural foraminal narrowing. There was evidence of T2

12  hyperintense signal within the central spinal cord, posterior to the C4-C5 intervertebral

13  disc. These findings raised suspicion for a demyelinating lesion in the region.

14      20.   On or about February 1, 2017, Plaintiff visited Board Certified Neurologist

15  Amir Sattar Khoiny, MD ("Dr. Khoiny") and was diagnosed with demyelinating disease of

16  CNS, "likely multiple sclerosis." Dr. Khoiny certified Plaintiff disabled.

17      21.   On or about February 7, 2017, Plaintiff underwent a lumbar puncture with

18  Board Certified Neurologist David Hannauer, MD ("Dr. Hannauer"). Plaintiff's spinal tap

19  panel was positive for multiple sclerosis.

20      22.   On or about February 15, 2017, an MRI of the cervical spine revealed a

21  cervical cord lesion and a disc osteophyte at C5-6, abutting the cord.   An MRI of the

22  brain revealed a new T1 hypointense lesion in the right cerebellar hemisphere.

23      23.   On or about February 22, 2017, Plaintiff returned to Dr. Khoiny and was

24  again certified disabled due to her multiple sclerosis. Plaintiff was started on Extavia for

25  treatment of multiple sclerosis.

26      24.   On or about October 20, 2018, Plaintiff presented to internist Roger Ong,

27  MD for pain over her neck and shoulders, attributed to multiple sclerosis. She was

28  diagnosed with demyelinating CNS disease and advised to follow up with neurology.

25.     On or about October 24, 2018, Plaintiff presented to Dr. Hannauer and reported numbness in her right leg. Plaintiff's shoulders were also tense and she experienced shooting pain in the right arm. Dr. Hannauer assessed paresthesias and intermittent numbness in the hands and right lower extremity.

26.     On or about October 24, 2018, an MRI of the cervical spine revealed a new T2 bright lesion in the cervical cord just above C3-4; T2 bright lesion in the cervical cord at the level of C4-5; the lesions were consistent with the demyelinating process. Level C5-6 showed flattening of the thecal sac as well as the ventral surface of the cord with moderate to severe canal stenosis.

27.     On or about December 5, 2018, Plaintiff's MRI of the cervical spine revealed a new T2 bright lesion in the cervical cord just above C3-C4, which measured 5mm in craniocaudal extent; persistent flattening of the thecal sac as well as the ventral surface of the cord with moderate to severe canal stenosis was observed at C5-6. Dr. Hannauer, MD certified Plaintiff disabled.

28.     On or about January 9, 2019, Plaintiff returned to Dr. Hannauer and reported tingling in her fingers, neck pain, and feeling lightheaded. Dr. Hannauer reviewed Plaintiff's MRI and observed the new cervical lesion. Plaintiff was subsequently prescribed a five day course of steroid infusions and advised to continue Extavia treatments for multiple sclerosis.

29.     On or about January 31, 2019, Plaintiff visited Internist Jennifer Armstrong, MD and reported blurred vision following her infusion therapy.

30.     On or about March 28, 2019, Plaintiff was recertified disabled by Dr. Hannauer.

31.     On or about April 30, 2019, Plaintiff's treating physician John Chuang-Yi Hsu, MD placed Plaintiff off of work as well.

32.     On or about June 9, 2019, Plaintiff was again certified disabled by Dr. Hannauer.

33.     On or about July 15, 2019, pain management specialist Artis Woodward,

1    MD ("Dr. Woodward") stated Plaintiff is capable of standing, walking, and sitting on an

2    occasional basis. She can only occasionally perform reaching at desk level, right

3    handling/ mousing, right fingering, and right keyboarding. Dr. Woodward stated Plaintiff

4    was disabled from all aspects of her job duties.

5         34.    On or about September 30, 2019, Dr. Woodard reiterated that Plaintiff was

6    incapacitated due to multiple sclerosis and certified her continued disability.

7         35.    Based upon the substantial medical evidence in the possession of

8    PRUDENTIAL at the time of the denial, the decision to deny disability insurance benefits

9    was wrongful and contrary to the terms of the Plan.

10        36.    To date, even though Plaintiff has been disabled, PRUDENTIAL has not

11   paid Plaintiff any disability benefits under the Policy since on or about April 18, 2019.

12   The unlawful nature of PRUDENTIAL's denial decision is evidenced by, but not limited

13   to, the following:

14        •    PRUDENTIAL engaged in procedural violations of its statutory

15             obligations under ERISA, including, but not limited to, failing to

16             promptly identify the medical consultants who reviewed her file; and,

17             failing to timely advise Plaintiff of what specific documentation it

18             needed from her to perfect her claim; and

19        •    PRUDENTIAL ignored the clear evidence of disability, combed the

20             record and took selective evidence out of context as a pretext to deny

21             Plaintiff's claim; and,

22        •    PRUDENTIAL ignored the opinions of Plaintiff's board certified

23             treating physicians and/or misrepresented the opinions of Plaintiff's

24             treating physicians.  Deference should be given to the treating

25             physicians' opinions as there are no specific, legitimate reasons for

26             rejecting the treating physicians' opinions which are based on

27             substantial evidence in the claim file.  Further, PRUDENTIAL's

28             financially conflicted physician's opinion does not serve as substantial

evidence, as it is not supported by evidence in the claim file, was not issued by a physician with the same level of medical expertise as the board certified treating physicians, nor is it consistent with the overall evidence in the claim file.

37.   For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, contrary to the evidence, contrary to the terms of the Plan and contrary to law.

38.   Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator discharge its duties in respect to discretionary claims processing solely in the interests of the participants and beneficiaries of the plan, *see* § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators provide a full and fair review of claim denials, *see* § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, *see* § 1132(a)(1)(B).

39.   As a direct and proximate result of PRUDENTIAL's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about April 18, 2019, to the present date.

40.   As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees and costs to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

41.   A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan.  Plaintiff seeks the declaration of this Court that she meets the Plan definition of disability and consequently she is entitled to all benefits from the Plan to which she might be entitled while receiving disability benefits and reimbursement of all expenses and premiums paid for such benefits from the termination of benefits to the present.  In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

1      WHEREFORE, Plaintiff prays for relief against Defendants as follows:

2      1.     An award of benefits in the amount not paid Plaintiff beginning on or about

3 April 18, 2019, together with interest at the legal rate on each monthly payment from the

4 date it became due until the date it is paid; plus all other benefits from the Plaintiff which

5 she might be entitled while receiving disability benefits and reimbursement of all

6 expenses and premiums paid for such benefits or, in the alternative, a remand for a

7 determination of Plaintiff's claim consistent with the terms of the Plan;

8      2.     An order determining Plaintiff is entitled to future disability

9 payments/benefits so long as she remains disabled as defined in the Plan;

10     3.     For reasonable attorney fees and costs incurred in this action; and,

11     4.     For such other and further relief as the Court deems just and proper.

14 Dated: August 31, 2021

**DarrasLaw**

FRANK N. DARRAS
SUSAN B. GRABARSKY
Attorneys for Plaintiff
KOURNEY SANKEY